IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE M. ALRED,                          :
                                             :
            Plaintiff,                       :
                                             :
      v.                                     :     C.A. No. 08-092-LPS
                                             :
ELI LILLY AND COMPANY, and                   :
MICHAEL ANDERSON,                            :
                                             :
                                             :
            Defendants.                      :

---

Matthew F. Boyer, Esquire, and Timothy M. Holly, Esquire of CONNOLLY BOVE LODGE &
HUTZ LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Ellen C. Boshkoff, Esquire; Craig M. Borowski, Esquire; and David S. Wagner, Esquire of
BAKER & DANIELS LLP, Indianapolis, Indiana.

M. Duncan Grant, Esquire, and James Harry Stone Levine, Esquire of PEPPER HAMILTON
LLP, Wilmington Delaware.

Attorneys for Defendants.

---

**MEMORANDUM OPINION**

March 22, 2011
Wilmington, Delaware

*Lee. P. Ak*

**Stark, U.S. District Judge:**

Presently before the Court is a Motion For Summary Judgment (D.I. 47) (hereinafter "Motion") filed by Defendants Eli Lilly and Company and Michael Anderson. For the reasons discussed, the Motion will be denied.

## BACKGROUND

### I.    Factual Background

Plaintiff Catherine M. Alred ("Alred") initiated the present action against Defendants Eli Lilly and Company ("Lilly") and Michael Anderson ("Anderson") alleging that her employment was terminated as a result of unlawful age discrimination and retaliation.

Alred was hired by Lilly as a Senior Sales Representative on May 24, 2001. (D.I. 49 at 32) She was assigned to the Baltimore District, which included the State of Delaware. (D.I. 49 at 33-34) Alred received three straight District Achievement Awards from 2001 to 2003 and garnered positive performance reviews from two different District Managers. (D.I. 53 at 1-5)

Alred was promoted to Senior Sales Representative II in 2005. (D.I. 53 Ex. 5) Then, in September 2005, Alred was involved in an automobile accident. (D.I. 49 at 22) Alred testified in her deposition that the accident caused injuries which hindered her ability to stand or sit for lengthy periods of time, but she added that – despite considerable pain – she worked without any substantial missed time. (D.I. 49 at 22)

In the meantime, on January 2, 2006, Defendant Anderson was promoted to the position of District Manager for the Baltimore East District. (D.I. 54 Ex. 50 at 36-37) Plaintiff Alred first met Defendant Anderson at a sales meeting on January 4, 2006. Alred testified that Anderson commented at the meeting that if he had known so many women would be on his sales team, he

1

would not have taken the job; he added that he must take action to achieve a "fully productive team." (D.I. 49 at 58, 60; D.I. 56 at 3)

At approximately the same time, Defendant Lilly began a new campaign known as "Sales Force of the Future." (D.I. 54 Ex. 50 at 30-34) In conjunction with this new campaign, Alred was assigned to work in a "triad" with two other sales representatives, Kelly Alteri ("Alteri") and Christine Blackmon ("Blackmon"). The three shared the same territory, customers, and products, and were equally responsible for sales results. (D.I. 54 Ex. 50 at 72; D.I. 49 at 82-83)

On January 15, 2006, Anderson for the first time rode along with Alred on sales calls. (D.I. 54 Ex. 49 at 66) Alred contends that Anderson questioned her regarding her automobile collision and how much longer she intended to work. (D.I. 49 at 66-67) Anderson testified in his deposition that Alred demonstrated weak face-to-face execution with customers. (D.I. 54 Ex. 50 at 77-78)

Later in January 2006, Anderson organized a business meeting with Alred, Alteri, and Blackmon. (D.I. 49 at 119) Anderson and Alred have competing interpretations of what occurred in this meeting. Anderson felt Alred did not participate and was disengaged in the meeting. (D.I. 54 Ex. 50 at 86-87) Alred, by contrast, felt she participated but that Anderson gave her no credit. (D.I. 49 Ex. 53 at 13)

Around the same time, Anderson says he was told by Alteri and Blackmon that two doctors with whom Alteri interacted were dissatisfied with Alred. (D.I. 54 Ex. 50 at 101-06) In Alred's view, Anderson was soliciting negative information about her from Alteri and Blackmon. (D.I. 54 at Ex. 4)

On February 13, 2006, Anderson and Alred met for another business meeting. (D.I. 49 at

2

69) Anderson asserts he attempted to address Alred's poor face-to-face execution and non-participation in the January meeting. (D.I. 54 Ex. 50 at 95) According to Alred, Anderson clearly explained that all sales representatives in the triad were responsible for the entire geographic territory; he made no exception for Alred, despite being under a doctor's order not to drive for longer than a one-hour period (limiting her ability to reach the entire territory). (D.I. 49 at 69-70) Alred testified that Anderson told her she would have to take a leave of absence or her performance would be ranked below standard. (D.I. 49 at 70) However, Anderson could not guarantee Alred would maintain her position if she took leave. (D.I. 49 at 70-71) Additionally, Alred claimed that Anderson asked whether she was too old to perform her job. (D.I. 49 at 70) She adds that Anderson asked other employees about Alred's age. (D.I. 56 at 4)

Alred spoke with Joyce Shaw and Bill Brown of Lilly's Human Resources department on February 14, 2006 and February 17, 2006, respectively. (D.I. 53 at 15) Alred then took Family and Medical Leave Act ("FMLA") leave from February 24, 2006 until March 27, 2006. (D.I. 49 at 86)

Within a few days after her return from FMLA leave, Alred was scheduled to make calls in Salisbury, Maryland, approximately a two and one-half hour drive from Wilmington. (D.I. 49 at 85-86) On April 3, 2006, Anderson went on a ride-along with Alred, after which he gave her a report summarizing his observations, as well as objective sales data. (D.I. 53 Ex. 12) Anderson's subjective ratings of Alred's competency were very low. (*Id.*)

Anderson again rode along with Alred on May 4-5, 2006. He concluded that Alred did not know how to effectively use the tools on her computer. (D.I. 53 at 10; D.I. 53 Ex. 4) As a result, Alred was assigned to work with a mentor. (D.I. 49 at 118) Alred testified in deposition

3

that Anderson also began imposing burdensome requirements on her – specifically, that she call him every morning to detail her plans for the day, that she call him after each sales call, and that she prepare additional reports – that he did not require of other sales representatives. (*See* D.I. 49 at 124-26, 130-37)

In June 2006, Anderson issued a verbal warning to Alred regarding her alleged lack of preparation, inability to complete tasks, and problems with teamwork. (D.I. 49 at 148) In particular, the warning cited an incident from December 2005 in which Alred and Alteri had disagreed regarding whether Alred must provide certain reports to Alteri – an incident about which Alred had ultimately complained to Human Resources. (D.I. 54 Ex. 50 at 213-14) In Alred's view, Anderson's boss, Steven Cohen ("Cohen"), lauded Anderson for issuing the warning to Alred, and pushed Anderson to continue building a team with young talent. (D.I. 54 at Ex. 18)

From June through August 2006, Anderson made note of Alred's alleged poor job performance. (D.I. 53 at Exs. 16-23) On August 5-6, 2006, Alred spoke with Bill Brown and Matt Morgan in Human Resources concerning what she perceived as Anderson's discriminatory actions. (D.I. 49 at 219-22) On August 23, 2006, Anderson submitted a draft written warning to Human Resources regarding Alred. (D.I. 54 at Ex. 18) On September 14, 2006, Anderson issued a written warning to Alred. (D.I. 53 Ex. 25) Around the same time, on September 15, 2006, Alred was informed by Human Resources that her complaint about Anderson's purportedly discriminatory actions had been dismissed. (D.I. 49 at 222 & P050) In late September 2006, Anderson entered into an operating agreement with Alred, Alteri, and Blackmon. (D.I. 49 at 231) Alred contends that under this agreement, more duties were assigned to her than to the

4

others in the triad. (D.I. 54 at Ex. 32) Alred further contends that Anderson ignored Alred's attempts to prove that acusations made against her by a co-worker were false (D.I. 54 Ex. 75-76; D.I. 54 Ex. 50 at 106-08), and that Anderson scrutinized her expense reports and sampling practices more than those of her coworkers (D.I. 49 at 176-180; D.I. 54 Ex. 50 at 255-58).

On December 13, 2006, Alred was placed on a three-month probation. (D.I. 53 Ex. 32) Alred alleges that Cohen continued to approve and encourage Anderson to take action against Alred and hire younger sales representatives. (*See* D.I. 54 at Exs. 37, 40) In her 2006 performance appraisal, Anderson rated Alred as "unsatisfactory" in five categories and "successful" in two categories. (D.I. 49 at 189-91)

Anderson went on ride-alongs with Alred in January and March 2007, and found on both occasions that her performance issues were unimproved. (D.I. 53 at Ex. 34, 36) Alred contends the sales calls were successful and that Anderson sent her a handwritten note to that effect on March 16, 2007. (D.I. 53 Ex. 37) In any event, on March 21, 2007, Lilly – on Anderson's recommendation – fired Alred. (D.I. 53 at 57)

## II. Procedural Background

In response to her alleged mistreatment, Alred filed a Charge of Discrimination with the Delaware Department of Labor on April 24, 2007. (D.I. 26 at 7) She initiated the present action in federal court against Lilly and Anderson on February 12, 2008. (D.I. 1) Alred received a Right to Sue Notice from the Delaware Department of Labor on August 26, 2008, and a Notice of Right to Sue from the United States Equal Employment Opportunity Commission (EEOC) on October 21, 2008. (D.I. 26 at 7)

Alred filed her Second Amended Complaint on May 27, 2009. (D.I. 26) In it, Alred

alleges that Defendants engaged in discriminatory and retaliatory conduct resulting in the termination of her employment, and that Defendants thereby violated her rights under the following statutes: (1) the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"); (2) the Delaware Discrimination in Employment Act, 19 Del. C. § 710, *et seq.* ("DDEA"); and (3) the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

Defendants filed their Motion for Summary Judgment on December 23, 2009. (D.I. 47) The Court heard oral argument on the motion on December 7, 2010. (D.I. 73) (hereinafter "Tr.")

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

6

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## DISCUSSION

By their Motion, Defendants contend they are entitled to summary judgment on each claim contained in Alred's Second Amended Complaint. The Court will consider each of Alred's claims in turn.

## I. Alred's ADEA Claim

By her Second Amended Complaint, Alred alleges that Lilly and Anderson discriminated

against her based on her age, and then retaliated against her for asserting her rights under the ADEA. (D.I. 26 at 9)

## A.    ADEA Discrimination

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a). When considering discrimination claims under the ADEA, the Court must use the *McDonnell Douglas* burden-shifting analysis. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). To make out a prima facie case of age discrimination under the ADEA, a plaintiff must satisfy four elements: (1) she is at least 40 years of age; (2) she is qualified for the position in question; (3) she has suffered an adverse employment action; and (4) she has been replaced by a sufficiently younger employee to permit a reasonable inference of age discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135,146 (3d Cir. 2004). If a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to demonstrate that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action. Therefore, at this point, to defeat a motion for summary judgment a plaintiff must identify some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perkskie*, 32 F.3d 759,

8

764 (3d Cir. 1994). To accomplish this, a plaintiff must show a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility. *See id.* at 765.

Here, Defendants first dispute whether Alred has met her burden of making out a prima facie case of age discrimination. Defendants appear to argue that Alred cannot prove she was qualified for her position. (*See* D.I. 48 at 36) Alred responds that the record contains evidence from which a reasonable factfinder could find each of the required elements of a prima facie case of age discrimination, including that she was qualified for she was qualified for her position. (D.I. 52 at 27-29)

The Court agrees with Alred that she has established a prima facie case of age discrimination. It is undisputed that Alred was over the age of forty, that she was terminated, and that she was replaced by a younger individual.[1] In light of the record evidence demonstrating that Alred had been a Lilly employee since 2001, that she consistently received positive reviews from 2001 through 2005, and that she was promoted during that period, the Court concludes that a reasonable factfinder could also find that Alred was qualified for her position. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) (stating, with regard to employee qualification element of Title VII action, plaintiff's "satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job").

The analysis, thus, shifts to the next step. Here, Defendants' proffered justification for terminating Alred is her purportedly poor job performance. Defendants contend that Alred cannot meet her burden of proving that this proffered reason is merely a pretext for unlawful age discrimination. In particular, Defendants insist that Alred's prior positive evaluations are

---

[1] Alred was replaced by a thirty-five year-old. (D.I. 52 Ex. A)

irrelevant and argue that any age-related comments made by Anderson are merely stray comments, made more than one year before Alred's dismissal, and do not help Alred to show pretext.

The Court, however, finds that the record is adequate to support a finding by a reasonable factfinder that Defendants' proffered explanations are pretextual. The Court agrees with Alred that a reasonable factfinder may find that Anderson's reviews of Alred's performance are implausible or unworthy of credence, given the prior positive performance reviews Alred had received from other supervisors. Defendants cite district court authority they contend renders a prior manager's evaluation irrelevant to whether a current manager's evaluations are pretextual. (*See* D.I. 65 at 10) (citing *Bastl v. Citizens Bank of PA*, 2008 WL 4279750, at *8 (W.D. Pa. Sept. 12, 2008)) In the Court's view, however, the Third Circuit has held that an employee's prior positive performance reviews may give rise to an inference of discrimination, if there are factors indicating that the shift from positive evaluations to termination was based on discriminatory motives. *See Colgan v. Fisher Scientific*, 935 F. 2d 1407, 1422 (3d Cir. 1991). Although a change from positive to negative evaluations is generally insufficient, on its own, to support a finding of pretext, it can, under appropriate circumstances, constitute compelling circumstantial evidence of discrimination. *See id.* at 1422; *see also Christiana Care Health Svcs.*, 701 F. Supp.2d 623, 631 (D. Del. 2010) (stating that usually negative change in performance reviews is not alone sufficient and usually plaintiff must show "at least one additional factor indicating that the shift from positive evaluations to termination was based on a discriminatory motive").[2]

_____

[2]It may be that the earlier evaluator was wrong, and that Anderson's evaluation of Alred's skills was more accurate. Alternatively, it may be that both evaluators were accurate, and that Alred's job performance simply deteriorated (dramatically) at the same time her managers

Here, in addition to the sudden and dramatic negative turn in Alred's evaluations, the record contains evidence of Anderson making negative comments about Alred's age. Taking the evidence in the light most favorable to Alred, the record shows that during his very first ride-along with Alred in January 2006, Anderson asked Alred how long she planned to continue working. (D.I. 49 at 66-67) During Anderson's first ride-along with Danita Woodhurst in January or February 2006, he asked Woodhurst about Alred's age. (D.I. 56 at 4) On February 13, 2006, when discussing her back injury, Anderson asked Alred, "Aren't you getting too old for this job?" (D.I. 53 at 14) While these statements occurred more than one year before Alred's termination, a reasonable jury could find them to be probative of pretext.

Other circumstantial evidence of pretext is that from the time Anderson became District Manager, his supervisor, Cohen, repeatedly encouraged Anderson to develop young talent. (*See* D.I. 54 at Exs. 14, 20, 37) Additionally, co-worker Dina Akbar's declaration details Akbar's belief that Anderson "was determined to target and route [sic] out older sales representatives so he could replace them with younger female sales representatives." (D.I. 55 at 5)

Thus, the Court concludes that a reasonable factfinder could find that Alred has proven by a preponderance of the evidence that Defendants unlawfully discriminated against her based on age when she was terminated. Accordingly, Defendants' Motion with respect to Plaintiff's ADEA discrimination claim will be denied.

### 2.    **ADEA Retaliation**

Defendants contend they are entitled to summary judgment on Alred's claim of retaliation

---

changed. The Court's holding today does not settle this factual dispute, it simply recognizes that a reasonable factfinder could conclude that Alred's performance was strong throughout and that Anderson evaluated her poorly only to conceal his discriminatory animus.

under the ADEA. According to Defendants, the only protected activity Alred engaged in was her September 2006 complaint to Human Resources. (D.I. 48 at 39) Defendants argue that Alred cannot establish a causal connection between this protected activity and her termination and, therefore, she is unable to demonstrate a prima facie case of retaliation. (*Id.*) Further, Defendants contend that because of the extended time between the protected activity and Alred's termination, she cannot show that Defendants' stated reasons for termination were a pretext. (*Id.*)

Alred contends she complained to Human Resources in February and September 2006, and that both complaints are protected activities. (D.I. 52 at 33-34) Alred argues that the evidence demonstrates a causal connection between these activities and her termination because there was "an unrelenting pattern of antagonism by Anderson after February 13, 2006, that only increased after her second complaint in September 2006." (*Id.* at 34)

"In the absence of direct evidence of retaliation, retaliation claims under . . . the ADEA . . . typically proceed under the *McDonnell Douglas* framework." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). A prima facie case of retaliation under the ADEA requires the plaintiff to show: (1) she engaged in a protected employee activity; (2) she was subject to an adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Id.*

The Court concludes that Alred has established a prima facie claim of retaliation under the ADEA. Defendants do not dispute that Alred's September 2006 complaint was a protected activity, or that her December 2006 probation and March 2007 termination were adverse employment decisions. Although Defendants contend that Alred's earlier February 2006

complaint to Human Resources cannot be considered, because Anderson was allegedly unaware of this earlier complaint, Anderson's knowledge of the complaint is a disputed issue of fact, as there is evidence from which a jury could find that Anderson was aware of the February complaint. (*See* D.I. 49 at 71-73) After informing Human Resources of Anderson's alleged discriminatory comments in February 2006, Alred went on FMLA leave. Almost immediately upon returning from leave, and continuing until her termination, Alred received poor competency ratings based on Anderson's subjective determinations. In addition, Alred produced evidence that after her September 2006 complaint, Anderson began subjecting Alred to reviews of receipts, fuel records, and sampling practices to which Lilly did not subject the other sales representatives. (D.I. 49 at 176-80; D.I. 54 Ex. 50 at 255-60; D.I. 53 at 47) From this series of antagonisms that followed Alred's complaints, an inference of causation may be drawn between the protected activities and adverse employment actions.

The time lapse between Alred's complaints in February and September 2006, and her termination in March of 2007, does not alter this conclusion. In *Kachmar v. Sungard Data Systems, Inc.*, 109 F. 3d 173, 178 (3d Cir. 1997), the Third Circuit emphasized that temporal proximity itself is not an element of the prima facie case but, rather, temporal proximity "merely provides an evidentiary basis from which an inference can be drawn." The Court added that because "there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Id.* The Court concludes that, here, the time lapse does not render Alred's evidentiary showing inadequate.

In sum, there are genuine issues of material fact regarding whether Alred's termination

was the result of age discrimination or retaliation for Alred's complaints about Anderson's alleged discriminatory conduct. Accordingly, Defendants are not entitled to summary judgment on Alred's ADEA discrimination and retaliation claims.

## II.     Alred's DDEA Claim

Alred alleges that Lilly and Anderson discriminated and retaliated against her for asserting her rights under the DDEA. (D.I. 26 at 10) Defendants contend that, under Delaware law, a plaintiff may not simultaneously bring ADEA and DDEA claims. (D.I. 48 at 34-35) Hence, Defendants further contend that they are entitled to summary judgment on Alred's DDEA claim. (*Id.*) Alred acknowledges that there is non-binding precedent interpreting the DDEA in the manner proposed by Defendants, but notes that the Third Circuit has not yet addressed the issue. (D.I. 52 at 35) In Alred's view, she complied with Delaware law because although she is simultaneously pursuing ADEA and DDEA claims, she is doing so only in a single, federal forum. (*Id.* at 36)

Under the DDEA, "it shall be an unlawful employment practice for an employer to . . . discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . age." 19 Del. C. § 711(a). Generally, the same evidence required to prevail on a claim under the ADEA is required to prevail on a claim of age discrimination brought under the DDEA. *See Lehmann v. Aramark Healthcare Support Svcs., LLC*, 633 F. Supp.2d 388, 391-92 (D. Del. 2009). It follows, in the circumstances presented here, that the Court's determination that Alred's evidentiary showing is sufficient to survive Defendants' motion for summary judgment on Alred's ADEA claim is likewise sufficient to survive Defendants' motion for summary

14

judgment on Alred's DDEA claim. Indeed, Defendants provided no argument suggesting that

Alred's evidentiary threshold is different under the federal and state statutes.

Instead, Defendants' argument for summary judgment on the DDEA claim is that

Delaware law prohibits the simultaneous pursuit of state and federal employment discrimination

claims. (D.I. 48 at 34-35) For this proposition, Defendants rely on two provisions in the DDEA.

The first provision is 19 Del. C. § 712(b), which provides (with emphasis added):

> The [Delaware] Department [of Labor] shall have jurisdiction over
> all cases arising under this chapter, affording review and oversight
> of employment practices in Delaware. The Department shall
> endeavor to eliminate unlawful discrimination in employment
> through its administrative process set forth below. ***This
> subchapter shall afford the sole remedy for claims alleging a
> violation of this chapter to the exclusion of all other remedies.***
> Upon termination of the administrative process by the Department,
> the charging party may institute a civil action in Superior Court of
> the State of Delaware pursuant to §§ 714 and 715 of this title.

This provision, Section 712(b), however, does not preclude a plaintiff from pursuing a DDEA

and ADEA provision in the same action in federal court. Instead, it is directed at limiting or

eliminating common law claims under Delaware law when a plaintiff elects to pursue the

statutory remedy provided by the DDEA.

This conclusion is derived not only from the text of § 712(b) – which makes no reference

to federal statutory claims – but, moreso, from the legislative history of § 712(b). In *Schuster v.

Derocili*, 775 A.2d 1029, 1036 (Del. 2001), a case in which the plaintiff alleged sexual

harassment, the Supreme Court of Delaware held that, in addition to claims under the DDEA, a

contractual employee also "may assert a cause of action for breach of an implied covenant of

good faith based upon a termination alleged to have resulted from a refusal to condone sexual advances." Subsequently, in 2004, the Delaware General Assembly amended the DDEA to add § 712(b), providing that the DDEA was "the sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies." The synopsis of the bill that created § 712(b) states that it "effectively re-establishes the exclusive remedy put in question by the decision in *Schuster v. Derocili.*" Delaware Bill Synopsis, 2004 Reg. Sess. S.B. 154. The synopsis also explains: "this bill is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action." *Id.*[3]

Caselaw also supports the Court's conclusion that § 712(b) prevents pursuit of claims alleging a breach of the covenant of good faith and fair dealing based upon employment discrimination, as the DDEA cause of action is the sole Delaware remedy for employment discrimination. *See, e.g., Wilcoxon v. Red Clay Consol. Sch. Dist.*, 437 F. Supp.2d 235, 247 (D.

---

[3]The entirety of Delaware Bill Synopsis, 2004 Reg. Sess. S.B. 154 reads as follows:

This bill eliminates the Equal Employment Review Board, and creates a corresponding Delaware Right to Sue in Superior Court after exhausting Administrative remedies. This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A. 2d 1029 (2001). Some definitions have been added to section 710, specifically new terms such as "No Cause Determination"; "Reasonable Cause Determination"; "Charging Party"; "Respondent"; "Delaware Right to Sue Notice"; "Mediation"; and "Conciliation". Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation and then permitting civil actions in Superior Court.

Del. 2006) ("[P]laintiff cannot assert a common law claim for the breach of the implied covenant of good faith and fair dealing where the Delaware state statute [DDEA] provides the exclusive remedy."); *see also E.E.O.C. v. Avecia, Inc.*, 151 Fed. Appx. 162, 165 (3d Cir. Oct. 13, 2005) (same); *Nieves v. Acme Markets, Inc.*, 541 F. Supp.2d 600, 610 (D. Del. 2008) (same); *Yatzus v. Appoquinmink Sch. Dist.*, 458 F. Supp.2d 235 (D. Del. 2007) (same); *Moon v. Del. River & Bay Auth.*, 2006 WL 462551, at *4 (D. Del. Feb.24, 2006) (same).

The second provision on which Defendants rely is 19 Del. C. § 714(c), which provides (with emphasis added):

> The charging party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. *A charging party is barred by this election of remedies from filing cases in both Superior Court and the federal forum.* If the charging party files in Superior Court and in a federal forum, the respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

This § 714(c) forbids DDEA claimants from pursuing their claims in both state and federal court. Section 714(c) does not, however, prohibit a plaintiff pursuing her ADEA remedies only in federal court – that is, a plaintiff who has not also initiated an action in Delaware Superior Court – from concurrently pursuing her DDEA remedies as part of that same, single action in federal court. The Court sees no reason to infer such a limitation; nor have Defendants provided one.[4]

---

[4]While it is true that, as Defendants emphasize, previously "[t]his court has held that a plaintiff who files claims under the ADEA is precluded from concomitantly pursuing state law claims under the DDEA," *Witcher v. Sodexho, Inc.*, 478 F. Supp.2d 663, 667 n.5 (D. Del. 2007); *see also Blozis v. Mellon Trust of Delaware Nat'l Ass'n*, 494 F. Supp.2d 258, 270 n.15 (D. Del.

Alred has pursued her DDEA and ADEA claims in a single forum: this Court. The cited provisions of Delaware law do not prohibit her from doing so. Accordingly, Defendants' Motion with respect to Alred's DDEA claims is denied.

## III.    Alred's FMLA Claim

Alred alleges that Lilly and Anderson interfered or attempted to interfere with her exercise of FMLA rights and, further, that they discriminated and retaliated against her for asserting her FMLA rights. (D.I. 26 at 8) Defendants have moved for summary judgment on each of Alred's FMLA claims.

### A.    FMLA Interference

Defendants contend they are entitled to summary judgment because the record

---

2007); *Mease v. Wilmington Trust Co.*, 2008 WL 111310, at *1 (D. Del. Jan. 8, 2008) (same), having considered the issue anew, this Court reaches a different conclusion. *See generally Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another. Where a second judge believes that a different result may obtain, independent analysis is appropriate.") (internal quotation marks and citation omitted); *see also Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993) ("*[S]tare decisis* could be invoked by a district court or by this court [i.e., Court of Appeals] based on a prior decision of this court, but the opinion of one district court is entitled only to comity in another district court."); *Yniguez v. State of Ariz.*, 939 F.2d 727, 736-37 (9th Cir. 1991) (noting that district judge's decision is "not even binding on the same judge in a subsequent action"); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) ("[A single district court decision] is not binding on the circuit, or even on other district judges in the same district."); *Mosel Vitelic Corp. v. Micron Technology, Inc.*, 162 F. Supp.2d 307, 311 (D. Del. 2000) ("[W]hile the opinion of one district judge may be found to be persuasive, it is not binding on another district judge (even if that judge happens to sit in the same district)."). As the Third Circuit observed in affirming this Court's judgment in *Witcher*, the Court of Appeals "has not directly addressed the question of whether plaintiffs may bring an action in federal court under both the ADEA and the DDEA." 247 Fed. Appx. 328, 329 n.1 (3d Sept. 6, 2007). Moreover, in *Witcher* itself, the Third Circuit did not answer the question. *See id.*

demonstrates that Alred's FMLA rights were unimpeded. (D.I. 48, at 24) Specifically, Defendants contend that Alred admitted in her deposition that no one interfered with her ability to take FMLA leave, no one told her she could not take leave, she was not asked to perform work while on leave, and she returned to the same position she had held prior to taking leave. (*Id.* at 25)

Alred responds that there is a genuine issue of material fact as to whether Anderson discouraged her from exercising her right to FMLA leave without fear of retribution. (D.I. 52 at 37) Alred testified that Anderson told her there were no guarantees she would keep her job if she took FMLA leave. (*Id.*) Further, Alred contends that Anderson and Cohen targeted employees with a "history" of taking FMLA leave. (*Id.*)

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a). Interference with the exercise of an employee's FMLA rights includes "not only refusing to authorize FMLA leave, but [also] *discouraging* an employee from taking such leave." 29 C.F.R. § 825.220(b) (2009) (emphasis added).

Defendants cite *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007), for the proposition that an employee claiming interference "must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Defendants additionally assert that "an interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d

19

Cir. 2005).

*Sarnowski* and *Callison* differ from the instant case. The plaintiffs in each of these other cases did not claim they were discouraged from taking FMLA leave; instead, they claimed only that the defendants in each of these cases impeded their FMLA rights. However, as noted above, the applicable Department of Labor regulations broaden interference claims to encompass employers who discourage employees from using FMLA leave, in addition to those employers who impede benefits. *See* 29 C.F.R. § 825.220(b)[5] To show an employer discouraged an employee from taking FMLA leave, an employee must show the employer took some affirmative step. *See Hilborn v. Cordado*, 2007 WL 2903453 (M.D. Pa. Sept. 28, 2007). Affirmative acts which have been deemed discouragement include pressuring an employee to take leave at another time, *see Williams v. Shenango, Inc.*, 986 F. Supp. 309, 313 (W.D. Pa. 1997), and proposing an employee work from home instead of taking FMLA leave, *see Butler v. IntraCare Hosp. N.*, 2006 WL 2868942, at *4 (N.D. Tex. Oct. 4, 2006); *see also Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F. Supp.2d 255, 268 (D.N.J. 2001) (finding employer's request that plaintiff delay FMLA leave until after busy holiday weekend sufficient to permit reasonable person to conclude that employee's rights under FMLA were chilled).

In *Grosso v. Federal Express Corp.*, 467 F.Supp. 2d 449, 464 (E.D.Pa. 2006), the Eastern District of Pennsylvania found genuine issues of material fact precluded summary judgment on a

---

[5]The Third Circuit has held that 29 C.F.R. § 825.220 is entitled to *Chevron* deference. *See Sommer v. The Vanguard Group*, 461 F.3d 397, 399 n.2 (3d Cir. 2006) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.") (internal quotation marks omitted).

plaintiff's FMLA interference/discouragement claims. The employer had discouraged the plaintiff from taking FMLA leave to care for his father. The plaintiff claimed that his employer told him he was taking too much leave, that he must return to work, and that – instead of taking leave – the plaintiff should place his father under nursing care. *See id.*

Here, like in *Grosso*, Alred is not asserting that her employer disturbed her allotment of FMLA leave, but only that her employer discouraged her from taking FMLA leave. Alred admitted that her FMLA rights were not disrupted. However, a reasonable factfinder could nonetheless find that Lilly interfered with Alred's FMLA rights by discouraging her from taking FMLA leave.

### B.    FMLA Retaliation

Defendants contend that Alred cannot establish a prima facie case of FMLA retaliation because no evidence supports a causal link between Alred's FMLA leave and her termination. (D.I. 48 at 26) Specifically, Defendants argue there is no temporal proximity between Alred's FMLA leave and her termination, and that no other facts support an inference of causation. (*Id.* at 26-27) Additionally, even if Alred can establish a prima facie case, Defendants contend that Alred has no evidence of pretext. (*Id.* at 28) According to the Defendants, Alred's "work sabotage" theory is conclusory, and Alred's previous positive performance reviews are not probative of pretext. (*Id.* at 28-29)

Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual" for exercising her FMLA rights. 29 U.S.C. § 2615(a)(2). Employers may not "use the taking of FMLA leave as a negative factor in employment actions,

such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.2209(c).

When considering retaliation claims under the FMLA, the Court must use the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Lipscomb v. Elec. Data Sys. Corp.*, 462 F.Supp. 2d 581, 587-88 (D. Del. 2006). A prima facie case of retaliation requires an employee to show that: (1) she took FMLA leave; (2) she suffered an adverse employment action; and (3) the adverse decision was causally related to her leave. *See Lipscomb*, 462 F.Supp. 2d at 588 (citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)). "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Id.* If a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to demonstrate that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action. Therefore, to defeat a motion for summary judgment, a plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. To accomplish this, a plaintiff must show a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility. *See id.* at 765.

The Court concludes that Alred adduced sufficient facts to make out a prima facie retaliation claim. It is undisputed that Alred took FMLA leave and that she was eventually terminated. With regard to the third prong, circumstantial evidence can be probative of a causal connection. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288-89 (3d Cir.

22

2001) (discussing evidence tending to prove causal nexus). Temporal proximity in this case is lacking (Alred was terminated approximately one year after returning from FMLA leave), but the Court "may look to the intervening period for other evidence of retaliatory animus." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

Here, there is evidence from which a reasonable factfinder could find that on her first day back from FMLA leave, Alred was scheduled to drive to Salisbury, Maryland, approximately two and one-half hours from Wilmington, whereas prior to taking leave she had not been required to drive beyond the hour-long commute to Dover, Delaware. (D.I. 49 at 85) Also, Alred began receiving poor competency ratings, based on Anderson's subjective determinations, almost immediately after returning from leave, and continuing until her termination. (*See* D.I. 54 at 78) The only evidence of Alred receiving poor subjective ratings from a supervisor prior to taking leave arises from the February 13, 2006 meeting, a meeting about which Alred and Anderson offer competing versions. Thus, the record demonstrates a series of antagonisms from which an inference of causation may reasonably be drawn.

Defendants consistently maintained that Alred was terminated for the legitimate reason of poor job performance. The Court concludes, however, that Alred adduced sufficient evidence of pretext to rebut this legitimate explanation for her termination. In contrast to Anderson's criticisms of her job performance, former Lilly employees Danita Rose Woodhurst and Dina Akbar state that Alred was competent and professional, and that Anderson would not give Alred

credit when due. (D.I. 55 at 3-4; D.I. 56 at 8-9)[6] Further, Alred's 2006 year-end evaluation,

completed by Anderson, includes objective measurements that are arguably at odds with

Anderson's subjective reviews. (D.I. 53 Ex. 33) For example, despite Anderson's low

subjective ratings, Alred ranked in the top 14% and 36% in Zyprexa Performance and Territory

Portfolio Performance, respectively. (*Id.*) Alred had been a Lilly employee since 2001, and had

not received a negative year-end evaluation prior to going on FMLA leave. (*Compare* D.I. 53,

Exs. 21-5 (2001-2005 performance reviews) *with* Ex. 33 (2006 performance review))[7]

In the Court's view, there are genuine issues of material fact regarding whether Alred's

termination was in retaliation for Alred taking FMLA leave. Therefore, summary judgment on

Alred's FMLA retaliation claim is denied.

## CONCLUSION

For the reasons stated, Defendants' Motion will be denied. An appropriate order follows.

---

[6]Woodhurst further stated that when she informed Anderson that she was pregnant and would take leave, Anderson replied, "maybe you should look for another job." (D.I. 56 at 6)

[7]Additionally, in an October 2006 email to Alred, Alteri, and Blackmon, Anderson addressed issues with the triad's operating agreement, particularly focusing on Alred. (D.I. 54 at 32) Bill Brown, a Human Resources representative at Lilly, responded, "[i]f an outsider reads this, I don't know how objective they would think you are being around this situation. . . . If [Alred] wanted to pose an argument that you were being unfair to her and out to get her, this email would not be a fun one to explain." (D.I. 54 Ex. 33)